THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **GOODWIN VARGAS-GONZALEZ**<br><br>Petitioner,<br><br>v.<br><br>**UNITED STATES OF AMERICA,**<br><br>Respondent. | **Civil No. 20-1330 (ADC)**<br>**[Related to Crim. No. 16-125 (ADC)]** |

**OPINION AND ORDER**

Goodwin Vargas-González ("petitioner") filed a *pro se* petition for relief under 28 U.S.C. § 2255, **ECF No. 1**, which was supplemented by petitioner's filings at **ECF Nos. 8, 10**. For the following reasons, the § 2255 petition at **ECF No. 1,** as amended and supplemented at **ECF Nos. 8, 10,** is **DENIED**.[1]

**I.   Background**

From 2009 to 2016, petitioner conspired to possess with intent to distribute cocaine, cocaine base, heroin, and marijuana. The scheme took place within one thousand feet of the Santiago Iglesias Public Housing Project (a housing facility owned by state public housing authority), in violation of 21 U.S.C. §§ 841(a)(1), 846, 860. During the conspiracy, petitioner was one of the drug-trafficking organization's leaders. The organization also employed violence,

---

[1] The case is summarily dismissed under Rule 4(b) of the Rules Governing § 2255 Proceedings. *Carey v. United States*, 50 F.3d 1097, 1098 (1st Cir. 1995).

which included shootouts and a drive-by murder. Petitioner also possessed firearms in furtherance of the above referenced scheme and conspiracy.

On March 3, 2016, petitioner and several co-conspirators were charged in a multiple-count Indictment by a Grand Jury. **Crim. No. 16-125, ECF No. 3**. Specifically, petitioner was charged with conspiracy to possess with intent to distribute controlled substances (*i.e.* two-hundred and eighty grams or more of a mixture or substance containing a detectable amount of cocaine base (crack), one kilogram or more of a mixture or substance containing a detectable amount of heroin; five kilograms or more of a mixture or substance containing a detectable amount of cocaine, one hundred kilograms or more of a mixture or substance containing a detectable amount of marijuana), aiding and abetting in the possession with intent to distribute heroin, cocaine, cocaine base, and marijuana, and conspiracy to possess firearms in furtherance of a drug-trafficking crime. *Id*.

Several months after being indicted, on October 6, 2016, petitioner entered into a Plea Agreement ("plea agreement") wherein he agreed to plead guilty to one count charging a conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 846, and 860. **Crim. No. 16-125, ECF No. 1310**. Petitioner testified under oath and in open court at his change of plea hearing before U.S. Magistrate Judge Bruce J. McGiverin. *Id*. On October 14, 2017, the Magistrate Judge issued a Report and Recommendation ("R&R") determining, *inter alia*, that petitioner's guilty plea was valid, since it had been voluntary,

knowing, and intelligent.[2] **Crim. No. 16-125, ECF No. 682** at 2. On June 7, 2017, a sentencing hearing was held. At the sentencing hearing, petitioner was granted a substantial amount of time for his allocution. **Crim. No. 16-125, ECF No. 1087**.

The Court sentenced petitioner to 168 months of imprisonment followed by a ten-year term of supervised release, based on a Total Offense Level of 34 and a Criminal History Category of I. *United States v. Vargas-González*, 767 Fed.Appx. 23, 25 (1st Cir. 2019). Petitioner appealed. However, on April 19, 2019, the Court of Appeals for the First Circuit affirmed this Court's sentence. *Id*.

On July 9, 2020, petitioner filed the instant § 2255 petition seeking to vacate his judgment claiming his plea was not knowingly nor voluntary, that there is new case law rendering his firearms enhancements unconstitutional, and that he received unconstitutionally ineffective assistance from both his trial and appeal attorneys. Petitioner later submitted two filings amending and supplementing his petition. *See* **ECF Nos. 1, 8, 10**. The government filed a response at **ECF No. 11**.

II.   Discussion

In essence, petitioner first contends his guilty plea was not knowing and voluntary. Among others, petitioner challenges the plea claiming that "[t]he judge at sentencing based on facts not contained in the plea ignored the government's request and imposed a top of the end

---

[2] Since no objections were filed, a judgment of conviction was formally entered on November 1, 2016. **Crim. No. 16-125, ECF No. 722**.

guideline sentence of 168 months." **ECF Nos. 1** at 6; **8**; and **10**. Second, petitioner asserts that the "two-point enhancement" for the possession of a firearm was held unconstitutional by the Supreme Court. *Id*. Third, petitioner agues his trial counsel was ineffective for Sixth Amendment purposes "for failing to raise that the government recommendation of 151 months was the sentence agreed" and any other characteristics raised by the probation office should not have been considered if not included by the parties in the plea agreement. **Nos. 1** at 7; **8**; and **10**.³ In other words, trial "[c]ounsel induced petitioner to accept the plea with the assurance of a sentence at the low end of the guideline." *Id*. He also argues his attorney "failed to assess [] other co-defendants similarly situated." **ECF No. 8** at 2. Finally, petitioner claims his appeal counsel was also ineffective for "failing to raise requested arguments." **ECF Nos. 1** at 8; **8**; and **10**.

The Court will address each argument in turn.

A. **Petitioner's plea was knowing, voluntary, and intelligent**

At the outset, it is worth noting that the Court of Appeals for the First Circuit already affirmed petitioner's sentence. In doing so, the Court of Appeals determined that this Court "referred to the shootouts and drive-by murder **before** it imposed and explained [petitioner]'s sentence and **made no reference to those acts** when it identified and considered the section 3553(a) factors." *United States v. Vargas-González*, 767 Fed. Appx. at 27 (emphasis added). Therefore, petitioner's assertions claiming that during sentencing the Court considered facts it

---

³ Notably, petitioner's arguments are somewhat intertwined. However, the Court will address them separately, as far as it can, for sake of clarity.

should not have considered is foreclosed (and incorrect, of course). Neither is it true that the Court "imposed a top of the end guideline sentence." **ECF Nos. 1** at 6; **10** at 4. Contrary to petitioner's contentions, his "sentence was **at the middle** of the Guidelines range, which was 151-188." *Id.*, at 25 (emphasis added).

Aside from these incorrect statements, even if the Court construed the petition as liberal as possible, petitioner's general claim of entering into the plea unknowingly and involuntarily is not tenable in light of the record.

A valid guilty plea must be knowing, voluntary and intelligent. The Court of Appeals for the First Circuit has "identified three core concerns of Rule 11: [a]) absence of coercion; [b]) the defendant's understanding of the charges; and [c]) the defendant's knowledge of the consequences of the guilty plea." *U.S. v. Isom*, 85 F.3d 831, 835 (1st Cir. 1996). In this case, the record contradicts petitioner's vague arguments.

First, the plea agreement (which, as discuss further below, petitioner admits he read and discussed in Spanish with his attorney) states that petitioner "acknowledges that no threats have been made against [him] and that [he] is pleading guilty freely and voluntarily because [he] is guilty." **Crim. No. 16-125; ECF No. 705** at 8. The plea agreement also explained that petitioner was facing a term of imprisonment "which shall not be less than ten (10) years and up to two (2) terms of life… and a term of supervised release of not less than ten (10) years…" all "in regard to COUNT ONE[.]" *Id.*, at 2. Moreover, the plea agreement made it clear that "[petitioner] [was] aware that… the Sentencing Guidelines are no longer mandatory[.]" *Id.*, at 2.

More importantly, the plea agreement states in no uncertain terms: "[petitioner] is aware that [his] sentence is within the sound discretion of he sentencing judge and the advisory Sentencing Guidelines… [petitioner] understands and acknowledges that the Court… is not bound by this agreement or the sentencing calculations and/or recommendations contained herein[.]" **Crim. No. 16-125; ECF No. 705** at 3. Additionally, the plea agreement stipulates "[petitioner] specifically **acknowledges and admits that the Court has jurisdiction and authority to impose any sentence within the statutory maximum**[,]" which, as noted in the plea agreement itself, was up to two (2) terms of life imprisonment.[4] *Id*. (emphasis added). Thus, the plea agreement on its own debunks petitioner's 2255 claims. Aside from the clear terms of the plea agreement, the rest of the record corroborates that, before accepting his plea, the Court made sure petitioner's plea was voluntary, knowing, and intelligent.

Indeed, the Court carefully addressed each of *U.S. v. Isom*'s factors before accepting defendant's plea. According to the record, the Court took care of the "three crucial aspects of the colloquy[:] whether [petitioner] had been coerced, whether he understood the charges, and whether he understood the consequences of his plea. Nothing in the record indicates that he was coerced or did not understand the agreement or the colloquy." *Id*., at 836.

As explained before, the Magistrate Judge held a Rule 11 hearing during which, *inter alia*, the following exchange and allocution ensued:

> THE MAGISTRATE: Were you able to fully discuss with your attorney the charge and the case in general?

---

[4] Perhaps the statutory maximum is why petitioner does not actually assert he would have rather go to trial.

> DEFENDANT VARGAS: Yes, sir…
> THE MAGISTRATE: Have you discussed with your attorney the purpose of today's hearing?
> DEFENDANT VARGAS: Yes, sir…
> THE MAGISTRATE: Are you fully satisfied with your attorney and the advice and representation you've received so far?
> DEFENDANT VARGAS: Yes, sir…
> THE MAGISTRATE: Counsel, do you believe your clients are competent to enter a plea and do you believe they've understood your explanations regarding the charge and the case in general?
> MR. RIVERA: Yes, Your Honor. I believe he is fully competent. He's asked intelligent questions about the indictment and we have discussed the discovery with him…

**ECF No. 1310** at 5. The Magistrate Judge went on:

> I find both defendants are competent to plead and they are aware of the purpose of the hearing.
> Now, I have to ask you some questions about your agreement to have this hearing held before a Magistrate… Do you understand that?
> DEFENDANT VARGAS: Yes…
> THE MAGISTRATE: And do you waive your right to have this hearing held before a District Judge?
> DEFENDANT VARGAS: Yes…
> THE MAGISTRATE:[…] Now, counsel, I understand each defendant has executed a Plea Agreement. Is that correct?
> MR. RIVERA: That is correct, Your Honor…
> THE MAGISTRATE: Let me ask both defendants, were you able to read your Plea Agreement as well as the Supplement attached to it and fully discussed these documents with your attorney before you signed them?
> DEFENDANT VARGAS: Yes, sir…
> THE MAGISTRATE: Did your attorney explain these documents and translated them to Spanish before you signed them?
> DEFENDANT VARGAS: Yes…
> THE MAGISTRATE: Do you understand the terms of the Plea Agreement and the Supplement?
> DEFENDANT VARGAS: Yes…

> THE MAGISTRATE: Does your Plea Agreement and Supplement contain all of the promises and agreements that you made with the prosecutor in this case?
> DEFENDANT VARGAS: Yes…
> THE MAGISTRATE: Has anyone made any other promises to you that are not in these documents in order to get you to plead guilty?
> DEFENDANT VARGAS: No…
> THE MAGISTRATE: I'm looking at your Plea Agreement and I see what I think are your initials on every page and I also see what I think are your signatures on the Plea Agreement and on the Supplement. Please look at these documents and tell me if you, in fact, initialed and signed them.
> DEFENDANT VARGAS: Yes, sir…
> THE MAGISTRATE: By initialing and signing the Plea Agreement and the Supplement, you intend to tell the Court you understand and agree with everything contained in these documents.
> DEFENDANT VARGAS: Yes, sir…
> THE MAGISTRATE: Your Plea Agreement is entered into pursuant to Rule 11(c)1(b) of the Federal Rules of Criminal Procedure and what that means is that the terms and conditions of your Plea Agreement **are merely recommendations** that you and the Government will make to the District **Judge who will sentence you but that the Judge does not have to follow these recommendations and retains authority to impose any sentence up to the maximum allowed by law**. Do you understand that? (emphasis added)
> DEFENDANT VARGAS: Yes, sir...
> THE MAGISTRATE: And are you fully aware that **if the Judge does not follow the recommendations of your Plea Agreement and gives you a sentence higher than you expect, then you will not be allowed to withdraw your guilty plea for that reason?** (emphasis added)
> DEFENDANT VARGAS: Yes, sir…

**ECF No. 1310** at 6-11. Thus, not only did petitioner review the entire content of the plea agreement and the supplements, but counsel also discussed it with him. Petitioner even admitted that counsel translated into Spanish the content of the plea agreement to him and that he understood it before signing it. *See id*. More so, petitioner was properly advised by the

Magistrate Judge of the nature of the charges, mandatory and minimum penalties, sentencing recommendation and the advisory nature of the sentencing guidelines.

Regardless of the fact that petitioner declared under oath before the Magistrate Judge that he had discussed with his attorney the plea agreement as well as all relevant documents, the government proceeded to explain on the record the essential terms of the agreement. Petitioner's counsel agreed with the government's allocution and representations. *Id*. Then the Magistrate Judge asked petitioner "did the prosecutor accurately describe the sentencing recommendations you have agreed to? DEFENDANT VARGAS: Yes, sir." *Id*., at 12. The Magistrate Judge continued asking:

> Let me ask both of you, has anyone threatened you or attempted in any way to force you to plead guilty or offered you money or something else of value in exchange for your plea?
> DEFENDANT VARGAS: No, Your Honor…
> THE MAGISTRATE: Are you pleading guilty of your own free will because you are in fact guilty?
> DEFENDANT VARGAS: Yes, Your Honor…
> THE MAGISTRATE: Are you aware that the offense you are pleading guilty to is a felony and if your plea is accepted, that may deprive you of valuable civil rights such as the right to vote, the right to hold public office, the right to serve on a jury and the right to possess a firearm?
> DEFENDANT VARGAS: Yes, Your Honor…

**ECF No. 1310** at 14. The Magistrate Judge even discussed with petitioner his exposure under the plea agreement, which is central to petitioner's claims in the instant petition. **ECF Nos. 1, 8, 10.**

> THE MAGISTRATE: Now, let me ask both defendants, have you and your attorney discussed what are the maximum penalties for the offense you are pleading guilty to?
> DEFENDANT VARGAS: Yes, Your Honor…

THE MAGISTRATE: Now, Count 1 as charged in the indictment carries **a minimum imprisonment term of ten years up to a maximum of two terms of life imprisonment**, as well as a fine of up to twenty million dollars and a supervised release term of at least ten years. Are you aware of that? (emphasis added)

DEFENDANT VARGAS: Yes, Your Honor…

THE MAGISTRATE: In deciding your sentence, <u>**the District Judge is required to consider but not necessarily follow what we call the sentencing guidelines**</u>. **Have you and your attorney talked about how the guidelines might apply in your case**?(emphasis added)

DEFENDANT VARGAS: Yes, Your Honor…

THE MAGISTRATE: The Court must also consider certain statutory sentencing factors and those factors include the seriousness of the offense, the need for deterrence of criminal conduct, the need to protect the public from further crimes, the need to provide the defendant with needed educational or vocational training or medical care and the need to provide restitution to any victims. So, are you aware the Court must consider all of these matters in deciding your sentence?

DEFENDANT VARGAS: Yes, Your Honor…

THE MAGISTRATE: And are you fully aware that any sentence the Court imposes **may be different from any estimate contained in your Plea Agreement** or any **estimate your attorney has given you**? (emphasis added)

DEFENDANT VARGAS: Yes, Your Honor…

THE MAGISTRATE: And are you fully aware that if you plead guilty, there will be no trial and you would be adjudged guilty without a trial and you would be waiving your right to trial and waiving these other rights that I just mentioned?

DEFENDANT VARGAS: Yes, Your Honor…

THE MAGISTRATE: Count 1 of the indictment charges a conspiracy to possess with intent to distribute controlled substances… In particular[…] that beginning not later than the year 2009 and continuing until March of 2016, in the municipality of Ponce and other nearby areas, that you and several other persons named in Count 1 did knowingly and intentionally conspired and agreed with each other and with other persons known and unknown to the Grand Jury to possess with intent to distribute two hundred and eighty grams or more of cocaine base, one kilogram or more of heroin, five kilograms or more of cocaine and one hundred kilograms or more of marijuana within one thousand feet of the Santiago Iglesias Public

> Housing Project and other nearby areas in Ponce. Now, that's what you're charged with in Count 1. Is that the offense you wish to plead guilty to?
> DEFENDANT VARGAS: Yes, Your Honor…
> THE MAGISTRATE: Let me ask both defendants. You've heard the prosecutor describe the facts and the evidence that she claims the Government has against you. Do you agree with and admit to all of the facts the prosecutor just described?
> DEFENDANT VARGAS: Yes, sir…
> THE MAGISTRATE: Mr. Vargas, how do you plead as to Count 1 of the indictment, guilty or not guilty?
> DEFENDANT VARGAS: Guilty…
> THE MAGISTRATE: I find both defendants are fully competent and capable of entering an informed plea and that they're aware of the nature of the charge and the consequences of the plea, and that the pleas of guilty are knowing and voluntary pleas supported by an independent basis, in fact, containing the essential elements of the offense. I would therefore issue reports and recommendations that pleas of guilty be entered as to Count 1 of the indictment[…]

**ECF No. 1310** at 14-26 (emphasis added).

Despite the record, petitioner argues (in general terms) that his plea was not knowing, intelligent or voluntary because he did not know that the District Court could impose a sentence higher than the one stipulated by the parties within the plea agreement. **ECF No. 1, 8, 10**. This contention is flagrantly contradicted by the record. As highlighted in the relevant portions of the transcript of the change of plea hearing above, before accepting his guilty plea, petitioner was made well aware that the District Court could, in fact, impose a different sentence. The Magistrate Judge explained this to petitioner not once but several times throughout the change of pea hearing. Therefore, any suggestion by the petitioner standing for the proposition that he

did not know that the Court could impose a sentence higher than the recommended in the plea agreement is simply untrue.

The above referenced portions of the record suffice to deny petitioner's motion without a hearing. Indeed, for many years, the First Circuit has held motions such as petitioner's, can be denied summarily where, such as here, they "contradict the record." *U.S. v. McGill*, 11 F.3d 223, 226 (1st Cir. 1993); *David v. U.S.*, 134 F.3d 470, 477 (1st Cir. 1993). Yet, to be sure, the Court will scrutinize the record even further.

The sentencing hearing's record also belies petitioner's contentions. Petitioner was conscious and mindful of the Court's sentencing discretion. In fact, during his sentencing allocution he begged the Court "to have mercy upon me and to sentence me from your heart to what God tells you to do []." **Crim. No. 16-125; ECF No. 1087** at 5.

Moreover, as reflected by the record, defendant acknowledged having discussed the pre-sentence report which submitted a higher guideline range of 168 to 210 months of imprisonment. **Crim. No. 16-125; ECF No. 803** at 30-31.[5] The Court discussed the above referenced report with petitioner during sentencing. The Court specifically asked petitioner if he remembered having discussed the presentence report with counsel. To this petitioner answered "Yes." The Court further asked petitioner if he understood the information that

---

[5] As discussed before and underscored by the government in its response, the "Presentence Report was corrected as to the additional point added." **ECF No. 11** at 16. To wit, during sentencing, the Court ruled that it would not add the additional point for petitioner's role despite the recommendations of the US Probation Officer to that effect while calculating the adjusted offense level.

appeared in the report to be correct. To this defendant also answered in the affirmative. **ECF No. 1087** at 5.

The Court of Appeals has held that "[w]hile a defendant's knowledge of the consequences of a guilty plea is a core concern of Rule 11 to which we pay heightened attention on abuse of discretion review, we nevertheless find [petitioner]'s argument unavailing because it is **flatly contradicted by the record**." *United States v. Nieves-Meléndez*, 58 F.4th 569, 578 (1st Cir. 2023). As highlighted in the preceding paragraphs, petitioner's 2255 challenge to his plea is in open contradiction of the entire record and is facially and substantively unsound in law. Thus, petitioner's first argument is hereby denied since the "allegations cannot be accepted as true because they are contradicted by the record… or [constitute] conclusions rather than statements of fact." *Dziurgot v. Luther*, 897 F.2d 1222, 1225 (1st Cir. 1990).

### B. Petitioner's arguments under *U.S. v. Taylor*

Petitioner explicitly recognizes that he was not charged with a 924(c)(3) violation and thus (implicitly) concedes his case falls out of *United Sates v. Taylor*'s scope. **ECF No. 10** at 5; 142 S.Ct. 2015, (2022). Quite literally, in *Taylor* the Supreme in Court answered whether "attempted Hobbs Act robbery" qualified as a "crime of violence" under 18 U.S.C. § 924(c)(3)(A)?". *Id.*, at 2016. Yet, without any support or discussion petitioner contends that the Court should have applied the same "categorical approach" because he received a two-points increase in "the base

offense level," which "amounted to an unreasonable sentence." *Id*.[6] However, *United Sates v. Taylor* has nothing to do with the applicable two points for "possession of a "dangerous weapon" in furtherance of a drug trafficking offense under the relevant sections of the U.S. Sentencing Guidelines. The case at bar presents nothing related to a "crime of violence" under § 924(c)(3)(A) nor was petitioner charged under that statute. Thus, petitioner has no valid claim under *U.S. v. Taylor*. That issue aside, as evinced by the record highlighted in the previous paragraphs, petitioner did in fact admit possessing a firearm in furtherance of the offense to which he pled guilty to (which is not 924(c)).

C. **Ineffective assistance of counsel (trial and appellate counsel)**

Where a petitioner moves to vacate his sentence on constitutional ineffective assistance of counsel grounds, he must show that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). "In order to succeed on an ineffective assistance claim, a '[petitioner] must show both that counsel's performance was deficient and that it prejudiced his defense.'" *Rojas-Medina v. United States*, 924 F.3d 9, 15 (1st Cir. 2019) (citing *Janosky v. St. Amand*, 594 F.3d 39, 45 (1st Cir. 2010)). "Unless a defendant makes **both showings**, it cannot be said that the conviction… resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687 (emphasis

---

[6] Petitioner does not challenge the underlying facts establishing that he possessed a firearm in furtherance of the crimes he pled guilty to.

Case 3:20-cv-01330-ADC  Document 15  Filed 09/06/23  Page 15 of 18

Page 15

added). "A [petitioner's] failure to satisfy one prong of the *Strickland* analysis obviates the need for a court to consider the remaining prong." *Tevlin v. Spencer*, 621 F.3d 59, 66 (1st Cir. 2010) (citing *Strickland*, 466 U.S. at 697). Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice... that course should be followed." *Strickland*, 466 U.S. at 679. *See also Martínez-Armestica v. United States*, 468 F. Supp. 3d 470, 473–74 (D.P.R. 2020). Here, petitioner fails at both prongs, his petition fails to support any claim of ineffective legal representation, and it also fails (by quite a wide margin) to show prejudice.

First, petitioner cannot challenge his guilty plea or sentence for that matter, by claiming his attorney failed to raise objections to the length (higher than the one recommended in his plea agreement) of the sentence imposed by the Court during his sentencing hearing. *See* **ECF No. 10** at 7 ("Counsel ignore[d] petitioner's request"). As discussed above, before the sentencing hearing was even scheduled, petitioner was well aware that the Court could impose a sentence different from the one recommended in the plea agreement to include one up to the statutory maximum. Thus, petitioner's contention standing for the proposition that "at the sentence… when petitioner realized the sentence imposed was higher tha[n] the one stipulated in the plea, he immediately requested counsel to object[,]" is clearly unavailing. **ECF No. 10** at 7.

Second, contrary to his skeletal claim, his attorney did in fact raise objections to the 168-month sentence during the sentencing hearing as well as to the adjustments for petitioner's role in the drug trafficking organization and conspiracy. **Crim. No. 16-125; ECF No. 1087** at 2, 16-17. As a matter of fact, petitioner's objection over the addition of one point for his role was sustained

by the Court during sentencing. *Id.*, at 2 ("That objection is noted and granted, which means I will not be adding that extra point that the Probation Officer added."). The other objections were overruled by the Court and affirmed by the Court of Appeals.

Third, petitioner's contention that counsel was ineffective for letting him enter a guilty plea even though the stipulated recommended sentence was not accepted by the Court is unavailing and contradicted by the record as already explained.

Fourth, even if petitioner had met the ineffective assistance bar, which he does not, on its face the petition also fails to meet the prejudice prong. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 59; *see also U.S. v. Rivera-Cruz*, 878 F.3d 404, 410 (1st Cir. 2017). Nowhere in the petition does petitioner state that he would have elected to go to trial "but for" counsel's alleged ill advice. As a matter of fact, by entering into the plea agreement petitioner avoided the potential statutory maximum sentence of life imprisonment. Therefore, no matter the degree of flexibility with which the Court reads the petition, petitioner has failed to "show that there is a reasonable probability" that he would have accepted to go to trial if he would have known that the Court would sentence him to 168 months of imprisonment instead of the recommended-151-month-sentence (*i.e.* counsel's alleged ineffectiveness).

Because failure to meet either prong of *Strickland* is fatal, the petition fails on this ground, too. *See United States v. Caparotta*, 676 F.3d 213, 219–220 (1st Cir. 2012). Even if the Court liberally

Case 3:20-cv-01330-ADC   Document 15   Filed 09/06/23   Page 17 of 18

Page 17

construes petitioner's *pro se* filings **ECF Nos. 1, 8, 10**, the petition clearly misses the mark. There is no assertion upon which the Court can rely to make a finding of "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Parsley v. United States*, 604 F.3d 667, 671 (1st Cir. 2010).

The Court now turns to petitioner's last collateral attack against his appellate counsel's performance. Petitioner's sole argument states that his appellate counsel was ineffective because he did not "raise [in direct appeal] the arguments contained in the current 2255" petition: failure to object to the sentence imposed which was not the one recommended within the plea agreement and the adjustments for the possession of a weapon in relation to the drug trafficking offense. **ECF No. 10** at 8-9. "Such a generic appeal," he claims without more, "violated [his] Sixth Amendment." *Id*. Petitioner's argument is meritless.

As explained before, the arguments in the instant petition are unavailing. Thus, on its face, petitioner's argument aimed at appellate counsel is a *non sequitur*. Because failing to meet either of *Strickland*'s prongs is fatal, the lack of merit of petitioner's argument suffices to reject petitioner's attack against appellate counsel's effectiveness. And, in any case, because his arguments would not carry the day on appeal, petitioner suffered no "prejudice" under *Strickland*'s bar.

On a final note, as highlighted by the government, the Supreme Court has unequivocally rejected the assertion that effective assistance requires litigation of every conceivable issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 52 (1983) ("Experienced advocates since time beyond

memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."); *see also Smith v. Robbins*, 528 U.S. 259, 288 (2000) (*citing Jones v. Barnes*) ("Appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.")

### III. Conclusion

In light of all the above, because petitioner's arguments are clearly contradicted by the record, the petition as amended and supplemented at **ECF Nos. 1, 8, 10 is DENIED**. This case is **DISMISSED**. Clerk of Court shall enter judgment accordingly.

### IV. Certificate of Appealability

Rule 11(a) of the Rules Governing § 2255 Proceedings provides that a "district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant." To merit a COA, an applicant must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Considering all the above, the Court **DENIES** the COA.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 6th day of September 2023.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**